## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KRISHNA P. SHARMA POUDEL and
BINOD DHAKAL,

      Plaintiffs,

v.

MID ATLANTIC PROFESSIONALS, INC.,

      Defendant.

Civil Action No. TDC-21-1124

### MEMORANDUM OPINION

Plaintiffs Krishna P. Sharma Poudel and Binod Dhakal have filed this action against their former employer, Defendant Mid Atlantic Professionals, Inc. ("MAPI"), alleging that they were unlawfully denied signing bonuses, expense reimbursements, wages, and overtime pay in violation of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-415 (LexisNexis 2016), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509. Pending before the Court is MAPI's Motion to Dismiss the Amended Complaint. The Motion is fully briefed, and the Court finds that no hearing is necessary. *See* D. Md. Local Rule 105.6. For the reasons set forth below, the Motion will be GRANTED.

### BACKGROUND

Plaintiffs worked as Nepalese-English language interpreters for MAPI, a Maryland corporation with its principal place of business in Germantown, Maryland, which provides language and other professional services through contracts with the United States government. Plaintiff Krishna P. Sharma Poudel, a resident of Virginia, worked for MAPI from September 2017

through February 2021.  Plaintiff Binod Dhakal, a resident of North Carolina, worked for MAPI from February 2017 until August 2019.  All of Plaintiffs work for MAPI occurred at the United States Embassy in Kabul, Afghanistan pursuant to MAPI's contract with the United States Department of State to provide interpreters for Nepalase-Gurkha security personnel.

Plaintiffs allege that MAPI failed to pay promised bonuses, to reimburse their expenses, to pay wages for all hours worked, and to pay at the overtime rate for hours worked above 40 hours per week.  Specifically, Plaintiffs allege that MAPI promised them $10,000 signing bonuses, contingent only on receiving a security clearance and deploying to Afghanistan.  Although Plaintiffs satisfied the conditions, they never received the bonuses.  In addition, MAPI failed to reimburse Plaintiffs for training, travel, and medical clearance expenses, all of which MAPI had promised to reimburse.

As to wages, Plaintiffs entered into employment agreements ("the Employment Agreements") executed by MAPI in Maryland and by Plaintiffs via electronic means from their home states.  The Employment Agreements contained the following provision regarding the governing law: "To the extent not preempted by federal law, the validity and effect of this Agreement and the rights and obligations of the parties hereto shall be construed and determined [in] accordance with the laws of the State of Maryland without regard to its choice of law principles."  Am. Compl. ¶ 20, ECF No. 11.

The Employment Agreements provided that Plaintiffs would be paid at a $48.00 hourly rate with a per diem amount for expenses.  In May 2019, MAPI changed the terms of the Employment Agreement to reduce the pay rate to $40.00 per hour.  MAPI then unilaterally began to pay Plaintiffs only $27.58 per hour for hours worked beyond 60 hours in a week.  Plaintiffs assert that they frequently worked additional hours without pay.

2

Plaintiffs allege that they worked seven days per week and at least 70 hours per week. At times they worked over 84 hours per week. However, they were not paid at the overtime rate for hours worked beyond 40 hours per week.

In the Amended Complaint, Plaintiffs allege that MAPI's pay practices violated the MWHL and the MWPCL. Specifically, they assert that MAPI's failure to pay overtime violated the MWHL and that the failure to pay Plaintiffs for all hours worked, and the failure to pay them the promised bonuses and expense reimbursements, violated the MWPCL.

## DISCUSSION

MAPI's Motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). MAPI argues that dismissal is warranted because Plaintiffs are not entitled to relief under the MWHL or the MWPCL. Specifically, MAPI contends that because Plaintiffs performed no work in the State of Maryland, any application of the MWHL or the MWPCL would be extraterritorial, in violation of Maryland's presumption against extraterritorial application of state statutes. Plaintiffs argue that the MWHL and MWPCL (collectively, "the Maryland wage laws") apply because (1) MAPI is a Maryland corporation based in the state, with Maryland employees, and (2) the Employment Agreements contain a Maryland choice-of-law provision.

## I.   Legal Standards

### A.   Motion to Dismiss

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint

3

as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B. MWHL and MWPCL

As relevant here, the MWHL generally requires that an "employer shall pay an overtime wage of at least 1.5 times the usual hourly wage." Md. Code Ann., Lab. & Empl. § 3-415(a). The MWPCL requires that "[e]ach employer shall pay a wage," where "wage" includes any bonus, commission, overtime wages, or "any other remuneration promised for service." *Id.* §§ 3-501 to 3-502. Both laws provide employees a private right of action for violations of the statutes. *See id.* §§ 3-427(a), 3-507.2(a).

## II. Extraterritoriality

MAPI argues that because Plaintiffs did not perform any work in Maryland, Plaintiffs may not seek relief under the Maryland wage laws based on Maryland's general presumption against extraterritoriality. "[U]nless an intent to the contrary is expressly stated, acts of the [Maryland] legislature will be presumed not to have any extraterritorial effect." *Chairman of Bd. of Tr. of Emps. Ret. Sys. v. Waldron*, 401 A.2d 172, 177 (Md. 1979); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015); *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918) ("Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction.").

While this general presumption is undisputed, it does not alone resolve the Motion. The Court must address how that presumption applies in the context of claims under the Maryland wage laws, and whether the facts relating to Plaintiffs' employment for MAPI sufficiently connect their work to Maryland such that the presumption against extraterritoriality does not apply.

4

The Court of Appeals of Maryland has not had occasion to decide directly how the presumption against extraterritoriality applies in the context of the Maryland wage laws. The Court of Appeals, however, has expressed that its protection of workers through the MWPCL "represents Maryland's strong public policy." *See Cunningham v. Feinberg*, 107 A.3d 1194, 1197–98 (Md. 2015). Consistent with this principle, Maryland courts have allowed claims under the Maryland wage laws to proceed even when the employer is based out-of-state, the employee is primarily engaged to work out-of-state, and the employee worked in Maryland on only a limited basis. *See Himes Assocs., Ltd. v. Anderson*, 943 A.2d 30, 46–48 (Md. Ct. Spec. App. 2008) (applying the MWPCL to an employee who lived in Maryland, worked primarily in Virginia for a Virginia corporation, but attended meetings twice a month in Maryland); *see also Cunningham*, 107 A.3d at 1198, 1218 (allowing the plaintiff's MWPCL claim to proceed where the law firm employer was based in Virginia, the employment contract was executed in Virginia, and the attorney employee was required to spend "the vast majority" of his work time at the law firm's office in Virginia but attended certain court proceedings, depositions, and client meetings in Maryland). These courts did not limit the application of the MWPCL only to work conducted in Maryland. *See Himes Assocs., Ltd.*, 943 A.2d at 48; *Cunningham*, 107 A.3d at 1218. Indeed, *Cunningham* specifically referenced the fact that Maryland courts have allowed for the application of Maryland workers' compensation laws to both an incident occurring in Maryland and three incidents suffered by the same worker that occurred out-of-state as illustrative of the general principle that "Maryland is willing generally to allow itself to be used as a forum by workers seeking recovery of their wage claims." *Cunningham*, 107 A.3d at 1218 (citing *Pro-Football, Inc. v. McCants*, 51 A.3d 586, 596–97 (Md. 2012)).

Relying on this guidance provided by the Maryland courts, this Court has similarly applied the Maryland wage laws to cases in which an employee worked in both Maryland and another state, even when the majority of the work occurred out-of-state. *See Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 720 (D. Md. 2020) (applying the MWPCL where the employee primarily worked out-of-state but worked for a Maryland company, was paid out of a Maryland office, and took "several work trips to Maryland"); *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455–56 (D. Md. 2015) (applying the MWPCL to a Maryland resident working for a Virginia company in Washington, D.C. where he often worked from his Maryland home and attended events and meetings in Maryland). Thus, even without having explicitly analyzed the issue of extraterritoriality, the Maryland courts have effectively concluded that application of the Maryland wage laws is not extraterritorial, even as to work that occurred outside of Maryland, when there is at least some work that occurs in Maryland. Accordingly, MAPI's citation to *Boyd v. SFS Communications, LLC*, No. PJM-15-3068, 2021 WL 1430723 (D. Md. Apr. 15, 2021), a case in which the discussion of extraterritoriality was in the context of a calculation of damages in a class action suit involving conduct in multiple states, rather than in relation to the general applicability of the Maryland wage laws to an employee who worked in multiple states, is not persuasive. *Id.* at *9–10.

Here, however, it is undisputed that Plaintiffs performed no work in Maryland. The question is then whether, in light of the presumption against extraterritoriality, the Maryland wage laws may apply even in the absence of any work occurring in Maryland, because MAPI is a Maryland company which may issue its paychecks from there. The Maryland Court of Appeals has recognized that the MWPCL was passed not only to benefit Maryland employees, but also to ensure that Maryland employers pay their employees what they are owed. *Cunningham*, 107 A.3d

6

at 1202 (stating that the "purpose" of the MWPCL, in part, is to provide "an incentive for employers to pay . . . back wages" (*quoting Battaglia v. Clinical Perfusionists, Inc.*, 658 A.2d 680, 686 (Md. 1995))). As this Court has previously held, as a matter of the plain text of the statute, which defines an employer as "any person who employs an individual in the State," Md. Code Ann., Lab. & Empl. § 3-501(b), an "employer" under the MWPCL includes any company that employs at least one employee in Maryland, which MAPI does. *See Roley*, 474 F. Supp. 3d at 719. While this Court held in *Roley* that status as a covered employer under the statute, issuance of payroll from Maryland, and some instances of the plaintiff working in Maryland were sufficient to render the MWPCL applicable to the plaintiff's work, it did not go so far as to conclude that the MWPCL could still apply absent any work in Maryland. *See Roley*, 474 F. Supp. 3d at 720 (noting that "[t]o the extent that the MWPCL arguably should be limited so as not to include employees with no connection of any kind to Maryland, that is not the case here").

If status as a covered employer under the MWPCL, even one that issues payroll from Maryland, is sufficient to establish that all Maryland wage law claims by any employee are not extraterritorial, then all employees of any company based in Maryland, even a multinational corporation, would potentially be able to invoke the MWPCL, even if they work only at offices or worksites in other states or countries and have never been to Maryland. The Court is not prepared to reach that conclusion absent some "expressly stated" intent to cover such extraterritorial work. *See Waldron*, 401 A.2d at 177.

In this instance, the MWHL and the MWPCL are both silent on whether they apply to work by an employee of a Maryland company whose work was performed entirely outside of Maryland, let alone outside of the United States. Elsewhere in the Labor and Employment Article of the Maryland Code, however, the Maryland General Assembly has, at least once, addressed

7

extraterritoriality directly. Maryland's workers' compensation statute specifies that "an individual is a covered employee while working for the employer of the individual: (1) in this State; (2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or (3) *wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States*." Md. Code Ann., Lab. & Empl. § 9-203 (emphasis added). In contrast, neither the MWHL nor the MWPCL even define the term "employee." Where Maryland has expressed clear intent to have certain Maryland labor statutes apply to work occurring entirely outside the United States pursuant to a Maryland contract, the failure to express such clear intent as to the MWHL or MWPCL weighs against the conclusion that the presumption against extraterritoriality has been overcome. *See Waldron*, 401 A.2d at 177. *Cf. Richards v. United States*, 369 U.S. 1, 11 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act").

The Court has not identified any other source that provides evidence of the State's intent to apply the Maryland wage laws to the work of employees of a Maryland company occurring entirely outside of Maryland, such as in a foreign country. If anything, available sources signal a contrary intent. Although not authoritative, guidance issued by the Maryland Department of Labor ("MDOL") supports the view that the protections of the Maryland wage laws require at least some work to be done in Maryland. The Maryland Guide to Wage Payment and Employment Standards, published by the MDOL's Division of Labor and Industry, states that for purposes of jurisdiction, "[c]laims for unpaid wages must be brought in the state in which the work was performed." Maryland Guide to Wage Payment and Employment Standards, Division of Labor and Industry, Maryland Department of Labor, http://www.labor.maryland.gov/labor/wagepay/

mdguidewagepay.pdf (last visited Feb. 4, 2022).  Likewise, the MDOL's Wage Claim Form to be used to file a claim under the MWHL or MWPCL with the MDOL's Employment Standards Service states:  "Who should file a wage claim?  An employee who *has worked in Maryland*." Wage Claim Form, Division of Labor and Industry, Maryland Department of Labor, http://www.labor.maryland.gov/forms/essclaimform.pdf (last visited Feb. 4, 2022) (emphasis added).

Notably, Plaintiffs have cited no case in which an employer's presence in Maryland alone was enough to cover a non-Maryland resident employee for work performed wholly outside of Maryland, much less one whose work was performed entirely outside the United States, and the Court has not found any.  Nor has it identified an analogous state wage protection law that has been interpreted to apply to work occurring entirely outside of the state.  In *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412 (S.D. Ohio May 17, 2005), for example, the court held that the Ohio Minimum Fair Wage Standards Act, which like the Maryland wage laws is silent on this issue, does not cover an out-of-state resident who performed all of his work in Pennsylvania, even though the employer was an Ohio company.  *Id.* at *3–4 (noting that "[t]here is no claim that [the plaintiff] ever worked for even a brief period of time in Ohio, which would change the analysis").

The Court therefore concludes that where Maryland has not stated an express intent to have the Maryland wage laws apply to the work of an employee who worked entirely outside the state, even one employed by a Maryland-based company, the MWHL and MWPCL do not apply to such work.

The Court recognizes, particularly in light of the recent advent of remote telework, that there may be examples of work by individuals physically located outside of Maryland that could

9

arguably be considered to be work within the state.  For example, an individual may work for a Maryland company entirely by telework from a remote location in another state or country but may have duties that include regular video meetings and discussions with the company's headquarters in Maryland.  An attorney may physically work in one state but make regular video court appearances before a court located in Maryland.  The Court's ruling does not address or resolve questions about whether such work is extraterritorial, or whether the Maryland wage laws apply to such work.  Here, however, where it is undisputed that Plaintiffs were residents of states other than Maryland, were hired to do a job that was always intended to be performed entirely out of the country, and engaged in no work activities inside Maryland or work-related interactions with any individuals or locations in Maryland, their employment was extraterritorial in nature and is therefore not subject to the provisions of the MWHL or MWPCL.

### III.    Choice-of-Law Clause

Plaintiffs further argue that the Maryland wage laws apply to their work based on the inclusion in the Employment Agreements of a choice-of-law provision selecting Maryland law: "To the extent not preempted by federal law, the validity and effect of this Agreement and the rights and obligations of the parties hereto shall be construed and determined [in] accordance with the laws of the State of Maryland without regard to its choice of law principles." Am. Compl. ¶ 20.

Plaintiffs argue that this choice-of-law provision effectively establishes that the Maryland wage laws apply to their work.  In *Cunningham*, however, the Maryland Court of Appeals declined to link the issue of choice of law to the question of whether a particular state's wage laws apply. *Cunningham*, 107 A.3d at 1203–04.  In rejecting an argument that the fact that an employment contract was governed by Virginia law because it was executed in Virginia necessarily precluded

10

the application of the Maryland wage laws, the court stated that an MWPCL claim "does not *per se* sound in contract," that it "does not require necessarily analysis of the parties' underlying contract," and that it "may be an independent, stand-alone claim." *Id.* at 1203–04. Rather, the court considered the choice-of-law question relevant only to disputes over "the validity and enforceability of the contract" or "the construction or interpretation of one of the express terms or provisions of the contract." *Id.* at 1206. Notably, it rejected an argument that the fact that Virginia law applied to the contract meant that the Virginia wage laws were implicitly "part and parcel" of the contract as "implied terms." *Id.* at 1208. Although the present case differs from *Cunningham* in that it has an express choice-of-law clause in the applicable contract, because that provision does not explicitly state that the parties agree to the applicability of the Maryland wage laws as a term of the contract, the Court declines to interpret it as having done so by implication. *See id.* Notably, consistent with *Cunningham*, a federal court has rejected the same argument asserted by Plaintiffs in holding that a California choice-of-law provision in an employment contract did not provide a basis to permit a claim for a violation of the California wage and hour law where the plaintiffs' work occurred exclusively out-of-state, because to do so "conflates statutory claims that exist independent of the contract with claims that arise from the agreement itself." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1064–65 (N.D. Cal. 2014).

In light of *Cunningham*, Plaintiffs' reliance on case law in this District for the proposition that a choice-of-law provision may allow state wage protection laws to apply to work performed in another state is misplaced. In *Taylor v. Lotus Development Corporation*, 906 F. Supp. 290 (D. Md. 1995), a case which predated *Cunningham*, the court upheld the application of a choice-of-law provision in an employment contract selecting the law of a state other than Maryland and thus deemed the Maryland wage laws inapplicable. *Id.* at 297–98. *Cunningham*, however, directly

11

criticized that ruling. *Cunningham*, 107 A.2d at 1214–15. In *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622 (D. Md. 2015), the court ruled that in light of *Cunningham*, Maryland public policy required the application of the Maryland wage laws to claims based on work occurring in Maryland, despite the employment contract's choice-of-law provision selecting the law of another state. *Id.* at 634. Although *Taylor* and *Blanch* applied choice-of-law provisions selecting the law of a state different from that in which the work occurred to govern the validity and interpretation of the employment contracts, neither addressed whether those provisions necessarily permitted a plaintiff to assert claims under that state's wage protection laws if none of the work occurred in that state. *See Taylor*, 906 F. Supp. at 293–95; *Blanch*, 124 F. Supp. 3d at 628–34. Under *Cunningham*, those are two different issues. *Cunningham*, 107 A.3d at 1208. Where the Maryland Court of Appeals has decoupled the issues of the applicable law governing an employment agreement from the applicability of state wage laws, the Court declines to conclude that the inclusion of a Maryland choice-of-law provision in the Employment Agreements provides a basis to find that the Maryland wage laws cover Plaintiffs' work which occurred exclusively in a foreign country.

Moreover, even if the choice-of-law clause could be interpreted as implicitly adopting as terms of the Employment Agreement a requirement that MAPI comply with all Maryland laws, including the MWHL and MWPCL, the Court would still have to assess whether those statutes actually impose requirements that apply to the payment of wages to a non-Maryland resident who has worked wholly outside Maryland. As discussed above, the Court has concluded that these statutes do not cover such work because it is extraterritorial. *See supra* part II. Accordingly, this argument fails because "[a]n employee cannot create by contract a cause of action that [state] law does not provide." *Cotter*, 60 F. Supp. 3d at 1065 (holding that even if a California choice-of-law

provision were intended to provide out-of-state workers with a cause of action under the California wage and hour law, it could not do so where the California law "does not apply extraterritorially"); *see also Mitchell*, 2005 WL 1159412 at \*4 (rejecting the claim that the applicability of Ohio law to an employment relationship meant that claims under Ohio's wage laws were valid where those laws could not be applied extraterritorially because all of the work occurred in Pennsylvania).  The Court therefore concludes that the choice-of-law provision does not provide a basis to allow the application of the Maryland wage laws to Plaintiffs' work.

## CONCLUSION

For the foregoing reasons, MAPI's Motion to Dismiss, ECF No. 12, will be GRANTED. A separate Order shall issue.

Date:  February 4, 2022

THEODORE D. CHUANG
United States District Judge